[Civ. No. 12525. First Dist., Div. One. Feb. 21, 1944.]

MAY G. BURNS, as Executrix, etc., Respondent, v. MASSACHUSETTS BONDING AND INSURANCE COMPANY (a Corporation), Appellant.

Thomas E. Davis for Appellant.

James M. Thomas and Jewel Alexander for Respondent.

PETERS, P. J.—In 1930 Mary O'Connor was declared to be an incompetent, and Joseph P. Donohue was appointed her guardian. The Massachusetts Bonding and Insurance Company as surety and Donohue as guardian executed a bond as required by the court in the sum of $17,000. Later the ward was restored to competency and, after an accounting, it was ascertained that the guardian owed the ward an amount which, with interest, exceeded $17,000. Thereafter, this action against the bonding company on its bond was instituted. The trial court entered its judgment in favor of the executrix of Mary O'Connor's estate in the sum of $17,000 plus interest. From this judgment both plaintiff and the bonding company have appealed. The present opinion is concerned only with the appeal by the bonding company. The appeal by plaintiff is considered in a separate opinion (*post*, p. 972 [—— P.2d ——]). The sole contention of the bonding company on its appeal is that the cause of action against it is barred by the statute of limitations provided for by section 1487 of the Probate Code.

Section 1487 of the Probate Code provides: "No action may be maintained against the sureties on a bond given by a guardian unless commenced within three years from the discharge or removal of the guardian; but if at the time of such discharge the person entitled to bring the action is under any legal disability to sue, the action may be commenced at any time within three years after the disability is removed."

By the terms of this section, the statute of limitations starts to run in favor of the surety upon the "discharge or removal" of the guardian. But the cause of action against the surety may not be in existence at that time. This is so because it is the settled law of this state that an action may not be maintained on the bond until the probate court has made a final order determining the amount owed by the

guardian to the ward. If no such order has been made, or if such order has been made but the time for appeal has not elapsed, or if it is appealed and such appeal is pending, any action against the surety is premature. (*Cook* v. *Ceas,* 143 Cal. 221 [77 P. 65]; *Graff* v. *Mesmer,* 52 Cal. 636; *Allen* v. *Tiffany,* 53 Cal. 16; *Smith* v. *Fidelity & Deposit Co.,* 130 Cal. App. 45 [19 P.2d 1018]; *Nickals* v. *Stanley,* 146 Cal. 724 [81 P. 117]; *Elizalde* v. *Murphy,* 4 Cal.App. 114 [87 P. 245]; *Brandon* v. *Anglo-California Trust Co.,* 177 Cal. 699 [171 P. 956]; *Ferris* v. *Independence Indemnity Co.,* 124 Cal.App. 154 [12 P.2d 148]; *Keck* v. *Keck,* 16 Cal.App.2d 521 [61 P.2d 79]; *Maloney* v. *Massachusetts Bonding & Ins. Co.,* 20 Cal.2d 1 [123 P.2d 449]; *Richardson* v. *Royal Indemnity Co.,* 21 Cal.2d 557 [134 P.2d 1]; see annotation 119 A.L.R. 83.) When this rule of law is considered in connection with the provisions of section 1487 of the Probate Code above quoted, a somewhat anomalous situation is presented. Frequently the guardian is removed for misconduct before he renders his final account. If the guardian's account is not filed, or is not acted upon by the court within three years of the discharge or removal of the guardian, the action against the surety is barred before it could have been commenced. Under such circumstances the period of limitations under section 1487 has started and fully run before the cause of action has accrued.

The obvious injustice of a rule of law that bars an action before it has accrued, has resulted in the courts strictly construing the provisions of section 1487. Thus, it has been held that the section only applies where the guardian has been removed or discharged by court order, and has no application to a removal by operation of law, such as by the ward reaching the age of majority or being restored to competency. (*Cook* v. *Ceas,* 143 Cal. 221 [77 P. 65]; *Maloney* v. *Massachusetts Bonding & Ins. Co.,* 20 Cal.2d 1 [123 P.2d 449].) But where a case falls within the statute, the cause will be held barred before it has accrued even though the delay in securing the order fixing the amount of the guardian's default may have occurred in the trial court. (*Keck* v. *Keck,* 16 Cal.App.2d 521 [61 P.2d 79].)

The order that the ward is required to secure before he may properly commence an action against the surety is a final order. If the trial court has rendered such an order,

and that order is not final—i. e., the time for appeal therefrom has not elapsed, or the order is pending on appeal—any action against the surety is premature. (*Cook* v. *Ceas,* 143 Cal. 221 [77 P. 65].) ██ The precise question presented on the present appeal is whether, when the guardian is removed by court order, and the ward secures an order fixing the amount of default, and both the ward and guardian appeal from that order, is the three-year statute of limitations provided for by section 1487 of the Probate Code tolled during the period the cause is pending on appeal? The trial court answered this question in the affirmative.

Before the respective contentions of the parties can be understood some more detailed reference must be made to the facts.

Mary O'Connor was adjudged incompetent in 1930. Her brother, Joseph Donohue, was appointed guardian, and he and appellant executed a bond in the sum of $17,000. On June 21, 1935, May G. Burns, the present respondent, acting as a friend, filed a petition in the probate court for the restoration of Mary O'Connor to capacity, and at the same time filed a petition for the removal of Joseph P. Donohue as guardian. On June 29, 1935, the guardian, Joseph P. Donohue, also filed a petition for restoration and also proffered his resignation as guardian. All the petitions were heard at one time. ██ On July 16, 1935, the court made and entered its order restoring Mary O'Connor to capacity, terminating the guardianship, and revoking the letters of guardianship issued to Joseph P. Donohue. Although respondent contends to the contrary, we have no doubt that this order constituted a "discharge or removal" of the guardian within the meaning of section 1487 of the Probate Code. (*Cook* v. *Ceas,* 143 Cal. 221 [77 P. 65].) Thus we start with the premise that the three-year period provided for in that section commenced to run on July 16, 1935. The present action against the surety was filed on May 3, 1940, two months less than five years after the statute started to run. It is obvious, therefore, that the action was barred, unless the statute was tolled for at least twenty-two months of that period.

During this period of four years and ten months the following occurred: On August 20, 1935, within a little over a month after she was restored to competency, Mary O'Connor served on the guardian's attorneys exceptions to his five

annual accounts. A referee was appointed and many hearings had. This consumed nearly two years in the trial court. Finally, on July 1, 1937, the trial court made its order settling the guardian's accounts and determining the amount of the indebtedness of the guardian. Had this order become final without an appeal, the cause of action would have accrued against the surety sixty days after July 1, 1937. Thus the ward would have had ten months more within which to file her action against the surety before the three-year period of limitations which had started on July 16, 1935, would have expired. But the order of July 1, 1937, did not immediately become final. Both the ward and the guardian appealed. The ward contended that she was entitled to compound interest on the sums misappropriated by the guardian. The trial court had denied this allowance. The guardian contended that as to certain items found to be misappropriated, the evidence was insufficient to support the findings. The appeals were separately heard. Mary O'Connor was successful in her appeal. (*Guardianship of O'Connor,* 28 Cal. App.2d 527 [83 P.2d 65].) The appeal of the guardian was summarily disposed of adverse to his contentions. (*Guardianship of O'Connor,* 37 Cal.App.2d 63 [98 P.2d 769].) The remittitur on the appeal of Mary O'Connor was filed in the superior court on November 27, 1938, and in the appeal of the guardian on April 3, 1940. This action against the surety was commenced on May 3, 1940.

Thus the pertinent dates are as follows:

*July 16, 1935:* Guardian removed by court order, thus starting the statute of limitations on any action against the surety.

*August 20, 1935:* Mary O'Connor filed exceptions to guardian's accounts.

*July 1, 1937:* Amount of misappropriations of guardian fixed by court order.

*November 27, 1938:* Remittitur on Mary O'Connor's appeal filed in superior court.

*April 3, 1940:* Remittitur on guardian's appeal filed in superior court.

*May 3, 1940:* This action against surety commenced, about four years and ten months after the order of July 16, 1935.

An examination of the above table discloses the following facts: Although the three-year statute provided for

by section 1487 of the Probate Code commenced to run in favor of the surety on July 16, 1935. Mary O'Connor's cause of action against the surety did not accrue until April 3, 1940, when the order fixing the amount of the misappropriations by the guardian became final. Thus, if the statute was not tolled by the appeals, plaintiff's cause of action against the surety was barred before it arose. Another fact is also apparent. Of the period of about four years and ten months elapsing between the date of the order removing the guardian and the date this action was filed, some two years and nine months (July 1, 1937, to April 3, 1940) were consumed on the two appeals. If the statute of limitations was tolled for that period, and this period of two years and nine months therefore be deducted from the four-year and ten-month period, it is obvious that this action was commenced within two years and one month from the date the guardian was removed, and was therefore commenced within the three-year period fixed by section 1487 of the Probate Code.

The trial court held that during the period consumed by the appeals the statute of limitations was tolled. With that holding we agree. It is true, as urged by appellant, that section 1487 contains no express provision tolling the statute during an appeal. The only exception contained in the statute is where the ward "is under any legal disability to sue." ██ That exception obviously refers to a ward who is under age or incompetent. ██ But the fact that the statute contains no express provision tolling the statute during an appeal is not conclusive. Although there is no case interpreting section 1487 of the Probate Code on this question, there are many cases holding that such implied exception must or should be read into other statutes. One of the closest analogies is to be found in the cases interpreting section 583 of the Code of Civil Procedure. That section makes it the mandatory duty of the trial court to dismiss an action if it is not brought to trial within five years after the date it is filed, with one exception—that is, where the parties have stipulated in writing that the time may be extended. In *Christin* v. *Superior Court*, 9 Cal.2d 526, 530 [71 P.2d 205, 112 A.L.R. 1153], it was held that where, after plaintiff filed his action, the defendant secured a change of venue, and plaintiff successfully appealed from the order granting the change of venue, the time consumed on the appeal should not be con-

sidered in determining whether the five-year period had elapsed. The court stated: "Petitioners, relying upon the general language of such cases as *Miller & Lux* v. *Superior Court, supra* [192 Cal. 333 (219 P. 1006)], and *Rosefield Packing Co.* v. *Superior Court, supra* [4 Cal.2d 120 (47 P.2d 716)], argue that in the light of the plain language of the statute there is only one circumstance that can suspend the running of the period, and that is the written stipulation provided for by the section itself. These decisions cannot, however, be so narrowly interpreted. It may be true that they absolutely deny any means of suspension, save by written stipulation, where it is *possible* to bring the cause to trial. But, despite the mandatory language of the statute, *implied exceptions* have been recognized where it was *not possible* to bring the cause to trial. Thus, where an appeal from a judgment is taken, the trial court has no jurisdiction to proceed in the cause during the pendency of the appeal, and consequently the time consumed on appeal is not considered as part of the statutory period. (*Kinard* v. *Jordan,* 175 Cal. 13 [164 P. 894].) And where contestants of a will were induced by fraud to consent to a dismissal of their contest, and later had the dismissal vacated, the court held that the time between the dismissal and the reinstatement of the action was to be excluded in computing the five-year period. (*Estate of Morrison,* 125 Cal.App. 504 [14 P.2d 102]; see, also, *Allyne* v. *Superior Court,* 200 Cal. 661 [254 P. 564].)"

The court concluded its discussion as follows (p. 533): "Counsel for plaintiff, in prosecuting his appeal from the void order, and in taking no steps toward a futile trial in San Francisco, nor any futile steps toward a trial in Los Angeles, acted reasonably and with due regard to the interests of his client and the courts. There was no way in which he could secure a speedier decision by the appellate court. If the actual time on appeal had consumed the whole of the five-year period, could plaintiff have been held barred from going to trial? This would be an amazing miscarriage of justice, penalizing conduct entirely reasonable, and inducing procedure detrimental to the interests of both court and litigants. And the same is true where not the whole period, but a substantial part of it is consumed on appeal. We are therefore led to the conclusion that under the circumstances of this case, the time consumed by the appeal from the order chang-

ing venue is not to be counted as part of the five-year period specified by section 583 of the Code of Civil Procedure."

In *Archer* v. *Edwards,* 19 Cal.App.2d 253 [65 P.2d 115], it was claimed that an action on a common count was barred by the statute of limitations. The action was not commenced until after a decision of the Supreme Court in a prior action had fixed the rights of the parties. The court summarily disposed of the contention that the action was barred in the following language (p. 256): "As to the claim of appellant that the action is barred by the statute of limitations, the record discloses that the statute of limitations was tolled by the action of the parties and the decision of the trial court, together with the time taken by the Supreme Court in deciding the appeal, up to and including the date that the decision of said Supreme Court became final, to wit: May 30, 1934."

In *Dillon* v. *Board of Pension Commrs.,* 18 Cal.2d 427, 431 116 P.2d 37, 136 A.L.R. 800], the Supreme Court cites the Christin case, *supra,* and many other cases, for the rule that: "It is well recognized that the running of the statute of limitations is suspended during any period in which the plaintiff is legally prevented from taking action to protect his rights."

In *Westphal* v. *Westphal,* 61 Cal.App.2d 544 [143 P.2d 405], it is stated: "It is settled that the time during which it is impossible to bring a case to trial because of the pendency of an appeal should be excluded in determining whether a case has been brought to trial within five years of the filing of the complaint."

(See, also, *Judson* v. *Superior Court,* 21 Cal.2d 11 [129 P.2d 361]; *Estate of Morrison,* 125 Cal.App. 504 [14 P.2d 102]; *Kinard* v. *Jordan,* 175 Cal. 13 [164 P. 894]; see cases collected 37 C.J. p. 1041, sec. 449; 34 Am.Jur. p. 198, sec. 242.)

We think the reasoning of these cases is applicable to the present situation. Any other rule would place the defrauded ward at the mercy of the fraudulent guardian so far as the cause of action against the surety is concerned. Where the guardian has been false to his trust, the only practical right of recovery exists against the bond, which is required by law to be given to protect the ward against just such a situation. After a guardian is removed by court order because of his fraudulent acts, it frequently takes a long period of time in the trial court, particularly if the guardian

desires to be dilatory, to secure an account and an order fixing the amount of the misappropriations. All during this period the statute of limitations is running in favor of the surety, but until the order becomes final the ward cannot sue the surety. If the guardian appeals, and continues to pursue dilatory tactics, far more than the three years will have elapsed before the order becomes final. Until relatively recently, even where an appeal was diligently pursued, it took several years for the appellate or supreme courts to act upon an appeal. Thus, in nearly every case, a fraudulent guardian could defeat the ward's action against the surety by appealing from the order fixing the guardian's liability. In nearly every case, if appellant's interpretation is correct, no matter how diligent the ward might be, the ward's action would be barred before it arose. There would be no way the ward could protect himself. It cannot be assumed that the Legislature intended any such harsh and inequitable result. In providing that guardians must give a bond to protect the ward, we must assume that the Legislature intended that such protection should be reasonably effective. It cannot be assumed that the Legislature intended to deprive the ward, in most cases, of such protection by the provisions of section 1487 of the Probate Code.

The same reasoning applies where the ward appeals from the order. Certainly, where, as in the present case, the trial court in fixing the liability of the guardian erroneously deprived the ward of a material portion of her recovery, it cannot be assumed that the Legislature intended that if the ward appealed to correct the judicial error, she should be deprived of her action against the surety, if, perchance, the appeal extended the period beyond three years. Such a result would mean that the ward would be without power to correct judicial error.

Appellant urges that to hold that the period consumed on an appeal is not to be included in computing the three-year period provided by section 1487 of the Probate Code is to legislate "judicially," that the Legislature has expressly created but one exception, and the courts are without power to create another by implication. The same objection could have been, and was, made in the Christin case, *supra*. ██ Moreover, it is the duty of the courts, within the framework of the statutes passed by the Legislature, to inter-

pret the statutes so as to make them workable and reasonable. In the present case we must interpret section 1487 of the Probate Code together with the other sections of that code requiring the giving of a bond and regulating the enforcement of rights against the bond. It is not straining the powers of construction given the courts to assume that the Legislature must have known of the general principle applicable to statutes of limitation that an appeal tolls the statute. The Legislature may well have assumed, if it thought of the matter at all, that it was not necessary to provide expressly for such a situation. Moreover, it is not an unwarranted assumption that the Legislature did not intend to deprive the ward of the benefits of the bond.

For these reasons, on the appeal of defendant, the judgment is affirmed.

Ward, J., and Dooling, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 20, 1944.