[No. F007819. Fifth Dist. June 15, 1988.]

LAWRENCE TRACTOR COMPANY, INC., Plaintiff and Respondent, v.
CARLISLE INSURANCE COMPANY, Defendant and Appellant.

**COUNSEL**

Larry A. Rothstein for Defendant and Appellant.

Sharp, Maroot, Hardcastle & Hatherley and V. Wayne Hardcastle for Plaintiff and Respondent.

**OPINION**

**BEST, J.**—Carlisle Insurance Company (Carlisle) appeals from an order awarding attorney fees to respondent Lawrence Tractor Company, Inc.

(Lawrence). The sole issue presented is whether a surety can be liable in excess of the penal sum of its bond for payment of attorney fees awarded as costs pursuant to Civil Code section 1717.

FACTS

Verburg Brothers, Inc. (Verburg) and Ranchers Finance Company (Ranchers) entered into a subordination agreement dated July 2, 1982, with respect to the financing of certain farm equipment purchased by Verburg from Lawrence.

Lawrence had sold certain farm equipment to Verburg which was financed by John Deere Company. As security for the transaction, Lawrence obtained a lien on certain crops owned or leased by Verburg. Thereafter, Verburg defaulted in its payments under the John Deere financing contracts and returned to Lawrence all of the equipment remaining in its possession to be sold by Lawrence and credited to the outstanding balance.

Recognizing the possibility of a deficiency between the total amount due and owing on the John Deere contracts and the amount which would be received by Lawrence from the sale of the equipment, Lawrence, Verburg and Ranchers agreed that Verburg would obtain additional financing from Anderson-Clayton & Company, with Lawrence subordinating its interest in the crops subject to the lien.

In the subordination agreement dated July 2, 1982, Verburg agreed to make certain payments to Lawrence, Ranchers, and John Deere Company, and:

"As further consideration for the subordination by Lawrence, Verburg shall provide to Lawrence a surety bond or other collateral in a form approved by Lawrence, thereunder and guaranteeing payment by Verburg up to the amount of the bond or collateral to Lawrence of deficiencies which may result after the sale by Lawrence of all farm equipment returned by Verburg to Lawrence . . . ."

The subordination agreement also contained an attorney fee provision: "If an action at law or in equity is necessary to enforce or interpret the terms of this agreement, the prevailing party shall be entitled to its reasonable attorney's fees, costs, and necessary disbursements in addition to any other relief to which it may be entitled by court order."

Contemporaneously with the subordination agreement, on July 2, 1982, Carlisle issued its bond in favor of Lawrence as obligee in the penal sum of

$50,000, which provided in pertinent part as follows: "The condition of the foregoing obligation is such that,

"WHEREAS, Principal and Obligee have entered into a Subordination Agreement (hereinafter called Agreement) dated July 2, 1982 which Agreement is incorporated by reference herein;

"WHEREAS, under the terms of the said agreement, Principal is required to give a bond indemnifying the Obligee against any direct monetary loss which may be due to a deficiency resulting after the sale of certain farm equipment as further set forth in the Agreement:

"NOW, THEREFORE, if the Principal shall well and truly indemnify the Obligee from any such monetary loss due to the aforesaid deficiency then this obligation shall be null and void, otherwise to remain in full force and effect; subject, however, to the following conditions:

"1. Obligee agrees and warrants that all sales of farm equipment shall be made in good faith and in a reasonable commercial manner pursuant to the California Commercial Code."

An action was filed in the Kings County Superior Court by Lawrence against Verburg Brothers, Inc., a California corporation, Rein Verburg, Clarence Verburg and Carlisle Insurance Company. Neither the pleadings nor a transcript of the evidence presented at the trial of the action was made a part of the record on appeal. It appears, however, that the Verburg defendants and Carlisle were jointly represented by the same counsel. In its brief on appeal and in its memorandum of points and authorities in opposition to the motion for attorney fees below, Carlisle states that the basic dispute between the plaintiff and defendants at trial was that the equipment was not sold in a commercially reasonable manner pursuant to the California Commercial Code. Lawrence does not dispute this characterization of the issue at trial.

In any event, following a bench trial, judgment was entered in favor of Lawrence and against Rein Verburg and Clarence Verburg, jointly and severally, in the amount of $77,673.82; against Rein Verburg in the amount of $146,379.85; and against Carlisle in the amount of $50,000. In addition, Lawrence was awarded "all costs and reasonable attorney's fees incurred upon noticed hearing, and interest on said sums at the rate of ten percent (10%) from and after the date of this judgment."

Following a written motion and hearing thereon, the trial court entered its "AMENDED ORDER RE ATTORNEY FEES" as follows: "After reviewing

the declarations and other papers presented relative to plaintiff's request for attorney's fees and further good cause, the Court awards attorney's fees in the sum of $16,854.50 as per plaintiff's request filed herein as against defendants Rein Verburg, Clarence Verburg and Carlisle Insurance Company, Inc., jointly and severally."

## DISCUSSION

Carlisle concedes that to the extent the actual deficiencies resulting after the sale of the farm equipment did not consume the entire penal sum of its bond, Carlisle would still have exposure for actual and reasonable attorney fees up to the remaining penal sum limit. This is true since it agreed to indemnify the obligee, Lawrence, from any monetary loss due to such deficiency, including attorney fees as set forth in the subordination agreement. ▪ Carlisle contends, however, that the trial court erred in awarding attorney fees as against it in that the judgment in the total amount of the penal sum of its bond exhausted its liability as surety for the Verburg defendants. We agree.

▪ It is the general rule that the amount that can be recovered from a surety is limited to the penal sum of the bond. (74 Am.Jur.2d, Suretyship, § 165, p. 116; 11 Appleman, Insurance Law and Practice, § 6354, pp. 98-105; see *Trumpler* v. *Cotton* (1895) 109 Cal. 250, 256-257 [41 P. 1033]; *Amerson* v. *Christman* (1968) 261 Cal.App.2d 811, 825 [68 Cal.Rptr. 378].) The general rule was adopted by the Supreme Court of California in the case of *Hartford Acc. Etc. Co.* v. *Indus. Acc. Com.* (1932) 216 Cal. 40 [13 P.2d 699], wherein the court cited with approval the following: " 'Even where the bond stipulates that damages shall include attorney's fees, under the rule that a surety on a bond is not liable beyond the penalty named therein, the surety is not liable for attorney's fees in excess of the penalty named.' (50 Cor. Jur., p. 92, sec. 149.) In the case of *Hartford Fire Ins. Co.* v. *Casey*, 196 Mo. App. 291 [191 S. W. 1072, 1076], the court ruled as follows: 'The general rule has always been that plaintiff cannot recover more than the penalty of the bond. [Citations.] An attorney's fee is a part of the loss sustained by an obligee when compelled to sue on a bond. In other words, it partakes of the nature of the damages sustained, and the agreement to pay same makes it a part of such damages. But the bond does not provide for protection against damages beyond the amount of the penalty. As to such damages in excess of the penalty, the obligee must stand the loss himself or at least look elsewhere than to the surety. Consequently, when the attorney's fee, made a part of the damages by a clause to that effect in the bond, forms a part of the excess above the face of the bond, then the

obligee must stand the loss of that too, at least so far as the surety is concerned.' " (*Id.* at p. 50.)

In *Hartford Acc. Etc. Co.* v. *Indus. Acc. Com., supra,* 216 Cal. at page 49, the award was for $20,000, the full penal sum of the bond, and $2,500 attorney fees in addition. The bond itself contained the following attorney fee provision: " 'The undersigned [principal and surety] are held and firmly bound for the payment of all legal costs, including reasonable attorney fees, incurred in all or any actions or proceedings taken to enforce payment of this bond, or payment of any award or judgment rendered against the undersigned surety, on account of the execution by it of this bond.' " (*Id.* at pp. 49-50.)

Despite the inclusion of the quoted attorney fee provision in the bond itself, the Supreme Court held: "We are of the opinion that the above authorities announce the correct rule in fixing the liability of the surety on the bond here involved. There is nothing in this bond indicating that the liability to pay attorney's fees is to be in addition to the sum of $20,000 fixed by the bond as the total liability of the surety. It follows that the award in so far as it provides for an attorney's fee of $2,500 must be annulled." (*Hartford Acc. Etc. Co.* v. *Indus. Acc. Com., supra,* 216 Cal. at p. 51.)

Although decided over 55 years ago, *Hartford Acc. Etc. Co.* v. *Indus. Acc. Com., supra,* has not been disapproved or qualified and is still binding on all inferior courts of this state. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Lawrence's argument that the trial court's order was proper because the attorney fee provision contained in the subordination agreement was incorporated in the bond is, therefore, unavailing. The cases cited by Lawrence are not to the contrary and are actually inapposite. *College Nat. Bank* v. *Morrison* (1929) 100 Cal.App. 403 [280 P. 218] involved a vehicle lease-purchase contract wherein the buyer agreed to pay the sum of $100 as attorney fees in the event of suit on the contract. The appellant personally guaranteed the performance of the contract which was assigned to plaintiff bank. The appellate court simply held, "Appellant having guaranteed the performance of the lease contract, was also liable for attorney's fees incurred in enforcing performance [citations]." (*Id.* at p. 408.)

In *Grace* v. *Croninger* (1922) 56 Cal.App. 659 [206 P. 130], the appellant was the guarantor of a real estate lease which contained an attorney fee provision. The appellate court upheld an award of attorney fees, holding that the liability of the guarantor was commensurate with the liability of the

lessees. (*Id*. at p. 668.) Neither case involved the issue of whether a guarantor or surety is liable for an award of attorney fees in addition to the fixed penal sum of a bond.

Lawrence's reliance on Civil Code sections 2787, 2807, 2808 and 2809 is also misplaced. None of these sections address the issue here presented. Nor does Insurance Code section 790.03, subdivision (h), defining certain unfair and deceptive acts or practices in the business of insurance, assist Lawrence. There is not even a hint of a claim that the action below was based on a violation of said statute.

Lawrence also contends that a surety can be held liable for attorney fees in excess of the penal sum of the bond "not as part of the debt for which the surety originally became responsible, but as damages for its own default and detention." Citing *Burns* v. *Massachusetts Etc. Ins. Co.* (1944) 62 Cal.App.2d 972 [146 P.2d 29], Lawrence then states, "The *Burns* court then stated what it considered the true rule, that the surety may be liable for interest on the penalty not as part of the debt for which he originally became responsible, but as damages for its detention. The same reasoning should apply to an award of attorney's fees."

The *Burns* court actually held as follows: "Up to the face amount of the bond the surety is liable for interest the same as the principal. For any other interest in excess of the face of the bond the surety can be held liable only for its own default, and cannot be held for the default of the principal. If the surety fails to pay when it should pay, then it is liable for the full amount of the penalty of the bond plus interest from the date when performance was due from it. Stated another way, for interest in excess of the penalty of the bond the surety is liable for interest from the time performance becomes due from it, as damages for its own withholding, that is, for its failure to pay the penalty when payment was due from it." (*Burns* v. *Massachusetts Etc. Ins. Co., supra,* 62 Cal.App.2d at pp. 975-976.)

Lawrence's reasoning is flawed because of the inherent distinction between an award of interest and an award of attorney fees in a proper case. ■ If allowable, interest is an element of damages provided by statute. (Civ. Code, §§ 3287-3291; *Lineman* v. *Schmid* (1948) 32 Cal.2d 204, 208-209 [195 P.2d 408, 4 A.L.R.2d 1380].) Attorney fees, on the other hand, unless provided for by statute, are allowable only if specifically contracted for. (Code Civ. Proc., § 1021; see 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 133 et seq.) Civil Code section 1717 simply establishes mutuality of remedy when a contractual provision makes recovery of attorney fees available for only one party. (*Reynolds Metals Co.* v. *Alperson* (1979) 25

Cal.3d 124, 128 [158 Cal.Rptr. 1, 599 P.2d 83].) Unless the contract provision specifically obligates the surety to pay attorney fees in excess of the penal sum of the bond, the holding in *Hartford Acc. Etc. Co.* v. *Indus. Acc. Com., supra,* 216 Cal. 40, precludes recovery from the surety for attorney fees beyond the express limits of its undertaking.

DISPOSITION

The order appealed from is reversed. Appellant to have its costs on appeal.

Woolpert, Acting P. J., and Stone (W. A.), concurred.